**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SIDE BY SIDE REDEVELOPMENT, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-3647** |
| **THE CITY OF NEW ORLEANS** | **SECTION: I/5** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by plaintiffs. For the following reasons, the motion is **DENIED**.

## BACKGROUND

Plaintiffs, Side by Side Redevelopment, Inc. ("SBS"), and Crescent City Property Redevelopment Association, LLC (CCPRA"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that the City of New Orleans deprived SBS and CCPRA of their Fourteenth Amendment right to due process when the city demolished houses that plaintiffs had purchased at tax sales without first providing them notice or an opportunity to be heard.[1] Plaintiffs also claim that the city is liable for inverse condemnation because they were deprived of their property interests without just compensation in violation of the Fifth Amendment.[2] The following facts are undisputed.

SBS, a Louisiana non-profit corporation, purchased a house

---

[1] Rec. Doc. No. 1.

[2] *Id.* at para. 29.

1

located at 820 North Galvez Street at a tax sale on November 11, 2004.[3] SBS' tax sale deed was executed on December 21, 2004[4] and recorded in the Orleans Parish Conveyance Office on February 18, 2005.[5] On December 3, 2005, the city posed a notice on the property advising, "Building Leaning. Structure Unsafe. Do Not Enter."[6] The notice further provided, "This is not a demolition order."[7] On May 4, 2006, the city mailed a "Notification of Intent to Demolish" to Barbara Stewart, who is identified in the local assessor's records as the owner, at 1915 Governor Nicholls Street.[8] The letter was later returned as undeliverable.[9] The city did not similarly mail notice to SBS, although the city's demolition file contained a printout from the assessor's records with the following information:

```
Line      Description
1         SQ 267 LOT 22 N GALVEZ
2         16X76 2000-2003 TAX ADJ TO
3         SIDE/SIDE REDEV., 6904
4         BREEDLOVE, 70125[10]
```

---

[3]Rec. Doc. No. 15-3, paras. 1, 2; Rec. Doc. No. 18-2, paras. 1, 2.

[4]Rec. Doc. No. 15-6.

[5]*Id.*; Rec. Doc. No. 15-3, para. 3; Rec. Doc. No. 18-2, para. 3.

[6]Rec. Doc. No. 18-2, para. 4; Rec. Doc. No. 15-7.

[7]Rec. Doc. No. 15-3, para. 4; Rec. Doc. No. 18-2, para. 4; Rec. Doc. No. 15-7.

[8]Rec. Doc. No. 15-3, para. 5; Rec. Doc. No. 18-2, para. 5; Rec. Doc. No. 15-8.

[9]Rec. Doc. No. 15-3, para. 7; Rec. Doc. No. 18-2, para. 7

[10]Rec. Doc. No. 15-3, para. 10; Rec. Doc. No. 18-2, para. 10.

The assessor's record also included the notarial archive number under which SBS' tax deed was recorded.[11] In July, 2006, the city demolished the house.[12]

CCPRA, a Louisiana limited liability company, purchased a house located at 2708 Second Street at a tax sale on or about November 11, 2004.[13] CCPRA's tax deed was executed on December 21, 2004 and recorded on February 23, 2005.[14] On May 1, 2006, the city mailed a "Notification of Intent to Demolish" to "Property Owner" at 2714 Second Street.[15] The letter was also returned to the city as undeliverable.[16] The city did not mail notice of the proposed demolition to CCPRA.[17] The city issued a demolition permit on August 17, 2006 and demolished the property on January

---

[11] Rec. Doc. No. 15-3, para. 11; Rec. Doc. No. 18-2, para. 11; Rec. Doc. No. 15-12. The city contends that although the assessor's record does identify the notarial archives number, it does not specify that it is the number under which the tax deed was recorded.

[12] Rec. Doc. No. 15-3, paras. 8,9; Rec. Doc. No. 18-2, paras. 8,9.

[13] Rec. Doc. No. 15-3, paras. 18, 19; Rec. Doc. No. 18-2, para. 18, 19.

[14] Rec. Doc. No. 15-3, para. 20; Rec. Doc. No. 18-2, para. 20; Rec. Doc. No. 15-13.

[15] Rec. Doc. No. 15-3, para. 21; Rec. Doc. No. 18-2, para. 21; Rec. Doc. No. 15-14. 2708 Second Street and 2714 Second Street are the addresses for units within the same building. The parties agree that these addresses refer to one structure, that CCPRA purchased the property at a tax sale, and that the structure was demolished in January, 2007.

[16] Rec. Doc. No. 15-3, para. 23; Rec. Doc. No. 18-2, para. 23.

[17] The city claims that it posted notice in The Times-Picayune before demolishing both houses. Rec. Doc. No. 18-2, paras. 12, 28.

19, 2007.[18] Following the demolition, the city's demolition file for this property, contained a printout of the assessor's record identifying "CRESCENT CITY PROPERTY REDEV." as the owner and providing the notarial archives number for the tax sale deed.[19]

Plaintiffs filed this motion for partial summary judgment, arguing that the city is liable for demolishing both structures without providing notice as required by the Due Process Clause of the Fourteenth Amendment. Plaintiffs also argue that the city is liable for inverse condemnation on the ground that plaintiffs were deprived of their property interests without payment of just compensation. In accordance with this Court's prior minute entry, the Court's ruling is limited to liability and it does not consider damages.[20]

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of

---

[18] Rec. Doc. No. 15-3, paras. 24, 25; Rec. Doc. No. 18-2, paras. 24, 25.

[19] Rec. Doc. No. 15-18; Rec. Doc. No. 15-3, para. 26; Rec. Doc. No. 18-2, para. 26.

[20] Rec. Doc. No. 14.

4

the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

**II. DUE PROCESS**

SBS and CCPRA claim that the city violated the Fourteenth Amendment when it failed to mail them notice before demolishing houses that they had purchased at tax sales. The city responds that it properly mailed notice to the owners as identified in the assesor's records and that it further published notice in The Times-Picayune. The city also argues that SBS and CCPRA did not have full title to the properties at the time of the demolitions and, therefore, they were not deprived of any property interests.

"To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). The Fourteenth Amendment's Due Process Clause requires that a State, prior to taking action that will affect legally protected interests, provide "'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S. Ct. 2706, 2709, 77 L. Ed. 2d 180 (1983)(quoting *Mullane v. C. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950)). When the names and addresses of those with legally protected interests are reasonably ascertainable, a State must provide notice by mail or

personal service. *Id.* Notice by publication or posting on a plaintiff's property is not reasonably calculated to provide actual notice. *Id.*

   A. **LEGALLY PROTECTED INTERESTS**

The city contends that the demolitions did not deprive SBS and CCPRA of any property interests because a tax sale only conveys inchoate title subject to a period in which the delinquent taxpayers may redeem the property. SBS and CCPRA acknowledge that the properties were subject to the tax debtors' rights of redemption. SBS and CCPRA contend, however, that they have protected property interests.

The Louisiana Constitution authorizes the tax collector to sell property subject to overdue taxes. La. Const. Art. 7 § 25(A). The tax deed issued by the tax collector constitutes prima facie evidence of a valid sale. *Id.* The delinquent taxpayer, however, may redeem the property for up to three years from the date of recordation of the tax sale. La. Const. Art. 7 § 25(B).

There is no evidence before the Court that a delinquent taxpayer had redeemed either property before the city demolished the structures. Because three years had not elapsed since plaintiffs recorded their tax sale deeds in February, 2005, both properties were still subject to the delinquent taxpayers' rights of redemption when the city demolished the structures in July, 2006

and January, 2007.[21]

Nonetheless, the notice requirement is not limited to those who have acquired fully developed ownership interests. Indeed, in *Mennonite*, the United States Supreme Court held that a mortgagee had a legally protected interest in mortgaged property that had become subject to a tax sale and, therefore, the mortgagee was entitled to notice reasonably calculated to apprise him of the pending tax sale. *Id.* at 798. The Court further held that when the mortgagee is identified by a publicly recorded mortgage, constructive notice is insufficient. *Id.* "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party...if its name and address are reasonably ascertainable." *Id.* at 800.

Both SBS and CCPRA had tax sale deeds conveying the property to them and both SBS and CCPRA had recorded their deeds in the Orleans Parish public records. Therefore, the Court is convinced that SBS and CCRRA had legally protected interests in the properties even though their titles remained inchoate and contingent upon the delinquent taxpayers' rights of redemption.[22]

---

[21]SBS and CCPRA argue that the redemption period has elapsed and that they are now owners of the subject properties. However, the relevant time is the time at which the city demolished the structures, not the time at which this lawsuit or motion was filed.

[22]The city also contends that a tax sale does not warrant the title of the property. This argument is also unavailing as plaintiffs had legally protected interests in the properties even though they had not acquired

8

*See Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)("The Fourteenth Amendment's protection of 'property,' however, has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to 'any significant property interest.'"); *Cf. New Orleans Redevelopment Auth. v. Lucas*, 881 So. 2d 1246, 1250-52 (La. Ct. App. 4th Cir. 2004)(finding that a tax sale purchaser did not have a legally protected interest before he obtained and recorded the tax sale deed). Moreover, because their deeds have been recorded in the public records since February, 2005, SBS' and CCPRA's identities as interested parties were reasonably ascertainable and they were, accordingly, entitled to notice by mail or personal service.[23] *See Mennonite*, 462 U.S. at 795, 800. Notice by newspaper publication was inadequate. *See id.*

### B. **IMMINENT DANGER**

The city also argues that it was not required to provide

---

ownership.

[23]The city does not dispute that SBS' and CCPRA's identities and addresses were reasonably ascertainable. Instead, the city argues that the city code did not require it to search for such information. Rec. Doc. No. 18-2, paras. 17, 33.
Plaintiffs have submitted the tax assessor's record, dated June 22, 2006, contained in the city's demolition file for the North Galvez Street property, which indicates that the property had been adjudicated by tax sale to "SIDE/SIDE REDEV" and identifies the notarial archives number for the record of the tax sale deed. Rec. Doc. No. 15-12. Plaintiffs also submitted the assessor's record contained in the demolition file for the Second Street property, which identifies CCPRA as the owner. Rec. Doc. No. 15-18. However, the record is dated March 12, 2007, which is after the demolition of the property. Nonetheless, it is undisputed that the tax sale deed for both properties was recorded in both the notarial archives and the conveyance records in February, 2005. Rec. Doc. No. 15-3, paras. 3, 20; Rec. Doc. No. 18-2, paras. 3, 20; Rec. Doc. No. 15-6; Rec. Doc. No. 15-13.

9

notice of the demolitions because both properties posed an imminent danger to the public, requiring the city "to take emergency action."[24] The city directs the Court to the municipal code, which provides in pertinent part:

> All structures determined by this process to be in imminent danger of collapse shall be posted with notice of that determination, until the time of the demolition. After a determination that a structure is in imminent danger of collapse or a risk to public safety, then the code official is authorized to cause the demolition of the nuisance without previous notice to the owner, executor, administrator, agent, lessee, or any person who may have a vested or contingent interest in the public nuisance other than the required posting of the property.

Code of Ordinances, City of New Orleans, Art. IV, § 26-166, Minimum Housing Standards Code.

In *Fuentes,* the Supreme Court held that a state may only deprive a party of their significant property interest without notice and a hearing in "truly unusual" situations where: (1) "the seizure is directly necessary to secure an important governmental or general public interest" and (2) "there has been a special need for very prompt action." *Id.* at 89 ("There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1970))). The Supreme Court further recognized in *Parrat v. Taylor* that "the necessity of quick action by the State or the impracticality of providing any meaningful

---

[24]Rec. Doc. No. 18, p. 6.

predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." 451 U.S. 527, 539, 101 S. Ct. 1908, 1915, 68 L. Ed. 2d 420 (1981), *rev'd on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

The demolitions in this case did not occur expeditiously. For instance, on December 3, 2005, the city posted notice at 820 North Galvez Street that the house was leaning and that the structure was unsafe. Yet, the city did not demolish the structure until July, 2006, more than seven months later.[25]

Notwithstanding the above-cited ordinance, the city attempted to mail notice to the prior owners of both properties before demolishing the structures. The city admits that on May 4, 2006, it mailed notice of the proposed demolition to Barbara Stewart, who was listed as the owner of 820 North Galvez Street, and that more than two months later it demolished the house. The city also admits that it mailed notice of the proposed demolition to "Property Owner" at 2714 Second Street on May 1, 2006 and then demolished the structure on January 19, 2007, more than eight months later.

---

[25] The city submits assessment forms wherein city inspectors deemed the houses located at 820 North Galvez Street and 2714 Second Street to be in imminent danger of collapse as of November, 2005. These unsworn, unauthenticated documents, however, are not admissible summary judgment evidence.

Given the city's attempt to provide notice and the delay between the time that the city proposed demolition and the time that the city actually demolished the structures, the city has not established a genuine issue of material fact that it was impracticable to provide notice or that "the necessity of quick action" precluded it from providing notice. *See Parrat*, 451 U.S. 527, 539; *Miles v. District of Columbia*, 510 F.2d 188, 192 n.3 (D.C. Cir. 1975). Nor has the city raised a genuine issue as to the lack of time to send notice. As stated by the U.S. District Court for the Northern District of Ohio:

> But where a community allows an appreciable amount of time to elapse between an inspection and demolition, the actions of the city themselves demonstrate that the exigency does not exist. Under such circumstances-where the city has allowed several days to elapse between identification of the problem and its resolution by demolition-it cannot claim emergency as the reason for dispensing with notice and opportunity for hearing.

*Superior Savings Ass'n. v. City of Cleveland*, 501 F. Supp. 1244, 1249 (N.D. Ohio 1980)(citations omitted). Through its attempts at sending notice, the city has defeated its own argument, indicating that it did not act promptly or "take emergency action." For the foregoing reasons, SBS and CCPRA were entitled to notice by mail or personal service.

### III. **INVERSE CONDEMNATION**

SBS and CCPRA also seek summary judgment that the city is liable for inverse condemnation. In particular, they argue that

12

each demolition amounts to a taking or damaging for which the city had not paid just compensation.

The United States Court of Appeals for the Fifth Circuit has recognized that property demolitions may constitute takings. *See, e.g., John Corp. v. City of Houston*, 214 F.3d 573, 579 (5th Cir. 2000). However, a violation of the Fifth Amendment's Takings Clause does not occur until plaintiffs have been denied just compensation through state procedures. *See id.* at 581 (citing *Williams County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 n.13, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985))(holding that a § 1983 takings claims was not ripe until plaintiffs sought compensation through state procedures).[26]

Plaintiffs offer no evidence that they have sought just compensation for the demolitions of their properties through state procedures or that they were denied just compensation.[27] Nor have they submitted any evidence that such attempts would be futile. *See*

---

[26]The only exception to the rule that plaintiffs first seek compensation through state procedures is where the property was taken for private purposes. *John Corp.*, 214 F.3d at 580 n. 12. Plaintiffs concede that the demolitions were "intended to serve a valid public purpose." Rec. Doc. No. 15-4, p. 11.

[27]Louisiana law provides that the procedure for seeking just compensation for a taking or damaging of property in the absence of expropriation proceedings is a state court action for inverse condemnation. *City of New Orleans v. Badine Land Ltd.*, 985 So. 2d 832, 835 (La. Ct. App. 4th Cir. 2008); *Holzenthal v. Sewerage & Water Bd. of New Orleans*, 950 So.2d 55, 62-63 (La. Ct. App. 4th Cir. 2007). "[T]he cause of action arises whenever a state commits a taking without justly compensating the victim." *Avenal v. La. Dep't of Nat'l Res.*, 886 So. 2d 1085, 1104 (La. 2004). There is no evidence that plaintiffs sought compensation through this procedure or that the state court procedure would have been inadequate. *See Severance v. Patterson*, 566 F.3d 490, 497 (5th Cir. 2009)(rejecting the argument that state procedures are unavailable where the state lacked administrative compensation procedures and where a state court action was the only means for seeking compensation).

13

*Liberty Mut. Ins. Co. v. La. Dep't. Of Ins.*, 62 F.3d 115, 117 (5th Cir. 2000). In the absence of such evidence, the Court cannot resolve plaintiffs' inverse condemnation claims.

## IV. **42 U.S.C. § 1983**

Notwithstanding the Court's determination that SBS and CCPRA were entitled to pre-deprivation notice, plaintiffs have not established all of the elements of their cause of action under § 1983, particularly that the unconstitutional conduct is directly attributable to an official policy or custom of the city. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Lomax v. City of New Orleans*, No. 04-0461, 2004 WL 1586539, at *2 (E.D. La. July 14, 2004)(Duval, J.); *Wilson v. City of New Orleans*, No. 00-3115, 2002 WL 83640, at *6 (E.D. La. Jan. 17, 2002)(Vance, J.); *Cannon v. City of New Orleans*, No. 96-387, 1997 WL 104981, at *2 (E.D. La. Mar. 10, 1997)(Clement, J.). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)).

Although plaintiffs' complaint alleges that the city had a policy or custom of failing to determine the identities of owners or persons with legally protected interests as well as a policy or custom of demolishing properties without giving notice and an

opportunity for a hearing,[28] SBS and CCPRA offer no evidence of an official policy or custom that served as the "moving force" of their deprivation.  SBS and CCPRA also offer no evidence supporting their allegations that the city failed to train and supervise its employees to ensure that such employees provide notice sufficient to satisfy due process to individuals with legally protected interests in property subject to demolition.[29] Given plaintiffs' failure to establish all of the elements of their § 1983 claims, summary judgment is not appropriate. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiffs' motion for partial summary judgment is **DENIED.**

New Orleans, Louisiana, June 23rd, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[28]Rec. Doc. No. 1, paras. 33-42.

[29]*Id.* at paras. 43-46.